[No. 20572. In Bank. — July 23, 1890.]

THE PEOPLE, RESPONDENT, v. ROBERT LEVINE, APPELLANT.

CRIMINAL LAW — DEFENSE OF ALIBI — SCRUTINY OF EVIDENCE — INSTRUC-
TIONS — CONSTRUING CHARGE AS A WHOLE. — The defense of *alibi* in a
criminal cause is not one requiring that the evidence in support of it
should be scrutinized otherwise or differently from that given in support
of any other issue in the cause; but an instruction that the proof offered
to sustain such defense is to be subjected to a rigid scrutiny is not
ground of reversal, if the remaining portions of the charge are such that,
when given as a whole, an intelligent jury could not have been misled by
it.

ID. — REASONABLE DOUBT. — The question for the jury to determine is as to
whether the theory of the prosecution against the defense of *alibi* is
supported by the evidence beyond a reasonable doubt.

ID. — EVIDENCE — EXPERIMENTS — TEST IN PRESENCE OF JURY — DISCRE-
TION. — The admission of evidence of an experiment applicable to the
facts in proof, in support of the theory of the prosecution as to the guilt
of defendant, is entirely in the discretion of the court; and the court
is not bound to suspend the trial to try the experiment over again in
the presence of the jury, as the defendant may show any different result
by proof of other experiments, if desired.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinions of the court.

*S. M. Payton,* and *Max Lowenthal,* for Appellant.

*Attorney-General Johnson,* for Respondent.

Fox, J. — In the petition for and in the argument upon rehearing, it is suggested that in Department we fell into error in relation to the evidence in regard to the pieces of candle left at the saloon by the plumber. We stated that he left three half candles there, and that three pieces of candle were found at the time of the fire. Our attention is now called to the fact that, according to the testimony of the plumber himself, he left one whole candle, a half candle, and a piece of another half candle; and that, according to the other evidence, only

two pieces of candle were found at the time of the fire,—one burning and the other extinguished. We accept the correction of an error into which we were led by a statement found in one of the briefs, examined after we had read the evidence, but we are unable to perceive that the error was prejudicial to defendant. To our minds, the evidence as corrected rather strengthens than weakens the case of the prosecution. More candle remains unaccounted for than we at first supposed, and if the candle which was found burning half or three quarters of an hour after the fire was discovered was whole when lighted, that fact will account for its having lasted so much longer than the other pieces, without resorting to any chemical considerations whatever.

As requested, we have carefully re-examined the evidence, and after such examination, we still fail to see how we can disturb the verdict on the ground of insufficiency of the evidence.

Upon the decision in Department, we were not free from doubt as to the correctness of instruction 10½, and we readily acquiesced in the prayer for a rehearing, that the case might be further considered upon that point. That instruction reads as follows,—the portion of it which we place in italics being the portion to which exception is taken:—

"*One of the defenses in this case is called an alibi;* that is, that the accused was elsewhere at the time the offense is alleged to have been committed. If this is true, it being impossible that the accused should be in two places at the same time, it is a fact inconsistent with the charge sought to be proved, and excludes its possibility. *This is a defense often attempted by contrivance, subornation, and perjury. The proof, therefore, offered to sustain it is to be subjected to a rigid scrutiny;* because, without attempting to control or rebut the evidence of facts sustaining the charge, it attempts to prove affirmatively another fact wholly inconsistent with it; *and this defense*

*is equally available, if satisfactorily established, to avoid the force of positive as of circumstantial evidence.* In considering the strength of the evidence necessary to sustain this defense, it is obvious that all evidence tending to show that the accused was in another place at the time of the offense is in direct conflict with that which tends to prove that he was at the place where the crime was committed, and actually committed it. In this conflict of evidence, whatever tends to support the one tends in some degree to rebut and overthrow the other, and it is for the jury to decide where the truth lies, giving the defendant the benefit of every reasonable doubt."

It is claimed that this charge is in direct conflict with and overrule's the decision of this court in *People* v. *Bushton*, 80 Cal. 160. We are unable to discover in the whole or any part of this charge any such conflict, or to see how it can work any such result. There is certainly nothing in the language adopted by the court below tending toward advising the jury that the defense of *alibi* must be made out by a preponderance of evidence, or to change the rule laid down in the Bushnell case, that " if, upon the *whole* case, they entertained a reasonable doubt, from the evidence, as to his guilt, he should be acquitted." So far from this, the charge concludes with the express direction that " it is for the jury to decide where the truth lies, *giving the defendant the benefit of every reasonable doubt.*"

Stripped of their context, the words which we have italicized in our quotation of the charge as a whole, though not new in such a place, would be objectionable. They have been both approved and condemned by able jurists at different times and in different states. If they had been given in this case free from all their context, and the case was one where we could conceive it possible that the verdict turned upon the question of the truth or falsity of the evidence given in support of the defense of *alibi,* we should be inclined to hold that the

instruction was erroneous to a degree that entitled the
defendant to a reversal of the judgment; for the defense
of *alibi* is, in our judgment, not one requiring that the
evidence given in support of it should be scrutinized
otherwise or differently from that given in support of
any other issue in a cause, but the remaining portions
of the charge are such that when given as a whole, as it
was, it is hardly possible that an intelligent jury could
have been misled by it. This is particularly so when
we read, as we do, in charge No. 20: "The burden of
proof is upon the prosecutor. All the presumptions of
law, independent of evidence, are in favor of innocence,
and every person is presumed to be innocent until he is
proven guilty. If, upon such proof, there is a reason-
able doubt remaining, the accused is entitled to the
benefit of it by an acquittal." And in 21 and 22: "In the
decision of a criminal case, there must be more than a
preponderance of evidence. It would not be sufficient
to justify a conviction if the jury should be satisfied of
the guilt of the defendant to such a moral certainty as
would influence their minds in the important affairs of
life. But the evidence must entirely satisfy the jury of
the guilt of the defendant before they can convict. If
the jury are not entirely satisfied, they should acquit."
With such a context as these instructions afford, followed
by thirteen instructions carefully prepared by and re-
quested by the defendant (which included all that he
asked), it is hardly possible that the words objected to
in, and forming only a small part of instruction $10\frac{1}{2}$,
could have misled the jury.

This is the more particularly so since there is no con-
flict in or contradiction of the evidence offered by the
defendant tending to prove an *alibi*. The prosecution
made no attempt to impeach the truth of that evidence,
but, accepting it as true, relied upon the proposition that
the train was laid and the candles lit before he closed
the saloon for the night. The question for the jury to

determine was, whether the evidence was sufficient to support this theory beyond a reasonable doubt.

It is in view of this theory of the case that appellant insists that it was error to admit the evidence of what is termed the candle "experiment." We held in Department that the admission of this evidence was entirely in the discretion of the court; that the court was not bound to suspend the trial to try the experiment over again in the presence of the jury, as the court would undoubtedly have received evidence of other experiments made for the same purpose, if any such had been offered.

The proof of the result of experiments was equally as open to the defendant as the prosecution; and if other experiments would have shown a different result from that shown by the experiment proved by the prosecution, the defendant had ample opportunity to show the fact. The books are full of authorities sustaining the court in admitting evidence of the result of experiments in chemistry, in toxicology, and particularly in the use of fire-arms, for purposes similar to that for which this evidence was admitted. It has been quite a common thing, in cases of homicide, to make experiments with fire-arms, to determine the carrying distance, the penetrating force, and the distance to which fire will be carried by fire-arms of certain pattern and caliber, and to prove the results of such experiments at the trial, as tending to show the guilt or innocence of the accused. The experiment in this case was one of a similar character, and for a similar purpose. Its result was not conclusive, but a mere circumstance to be considered in connection with the other evidence in the cause. It was both competent and admissible; its weight was for the jury to determine. We cannot agree with counsel that it was the "material and effective" evidence in the cause. The material and effective evidence on that branch of the case was the substantive fact of the

candles themselves, and the condition in which they were found. They and the coal oil, with their surroundings, where tangible things, rendering it certain that the fire was incendiary, and the proof in relation to them, independent of any proof of the result of experiment, was "the material and effective" proof in the case.

We are also reminded of the age and of the reputation of the defendant, and of the severity of his punishment. His age and reputation were matters addressed to and undoubtedly considered by the jury. Notwithstanding them, the jury have found against him, and on evidence of such a character that we are not at liberty to disturb their verdict. In view of his age and reputation, the severity of his punishment may excite our sympathies, but it cannot control our judgment. The penalty imposed by the court below was not in excess of that prescribed by law; and upon the assumption of his guilt, upon which alone any penalty could be imposed, no mild punishment would have been commensurate with the offense; for it was no light offense to attempt, at midnight, to burn a hotel in which more than a hundred people were sleeping.

Judgment and order affirmed.

SHARPSTEIN, J., McFARLAND, J., THORNTON, J., and BEATTY, C. J., concurred.

PATERSON, J., and WORKS, J., dissented, on the ground that the court erred in giving instruction 10½.

The following is the opinion of Department One, above referred to, rendered on the 5th of December, 1889:—

Fox, J. — Information against the defendant for the crime of arson, verdict of guilty, motion for new trial made and denied, and judgment of imprisonment. Defendant appeals from the judgment, and from the order denying his motion for new trial.

Defendant's points are nowhere stated separately, or with any degree of clearness, and we are left to fish them out as best we may from a general argument as to the character and weight of the evidence, and alleged errors of the court, in the course of the trial, in the admission and rejection of evidence.

On the night of January 24, 1888, a fire broke out in the basement of the New United States Hotel, at Los Angeles, the fire being discovered and the alarm sounded at 12:45 o'clock. Said basement was at the time occupied by the defendant as a saloon. The evidence leaves no possible doubt that the fire was incendiary, and that fact is not disputed; but it is claimed that the evidence was insufficient to show that the defendant committed the act, and that several errors occurred during the trial, in the admission and rejection of evidence, and in the charge to the jury.

It is established by the evidence that the defendant was the lessee of this basement, and in it was carrying on a saloon, which was not at the time a prosperous concern. A few days before the fire he had made an effort to sell it at auction, but could not realize at the sale the limit which he had placed upon it, and the sale was not made. The limit fixed was two thousand dollars. The stock and fixtures were insured for two thousand five hundred dollars. When the fire was first discovered it was seen through a window, and was located behind the bar. When an entrance was effected, the bar was all ablaze, and the room was stifling with the smoke of coal oil. Even after the fire was extinguished, persons could not remain in the place long at a time, because of the strong smell of coal oil. A coal-oil measure and a five-gallon coal-oil can were found in the room, near where the fire started; also, rags, straw, and other refuse matter were found near the fire, and at several points in the room, saturated with coal oil, as also were the walls, counters, and floors. According to defendant's testi-

mony, the only use defendant had for or made of coal oil, in the premises, was to supply his cigar-lighter. A few days before the fire, a plumber who had been engaged in making some repairs in the premises had left three half candles there. There were several lockers under the counter. In one of these a small piece of candle was found, still burning, with some of the refuse saturated with coal oil near it. Two other small pieces of candle were found under the counter, but not burning when found. An experiment was afterward tried, in the burning of half candles, and it was found that it took an hour and forty-two minutes to burn one down to the point to which these had been burned, and the result of this experiment was given in evidence. The piece found still burning was shorter than the others.

The owner of the building testified, among other things, to a conversation had with the defendant some time before the fire, in which defendant said he could not pay the rent, and desired to sell out, saying that if he could not sell out for sixteen hundred dollars he would " have to sell out to the insurance company."

The evidence on the part of the defense shows that the defendant closed up the saloon at about eleven o'clock that night; that during the evening several persons had been in the saloon and noticed no smell of coal oil; that some of them remained until the saloon closed, and saw the defendant when he locked up and left the place, and they observed no smell of coal oil or other unusual occurrence or proceedings about the saloon. According to the testimony of the defendant, he went almost directly home and went to bed. Other evidence shows that he did, not long after the time when it is proved the saloon was closed up, go home and go to bed, where he remained until notified of the fire.

Under this evidence, the defendant relies upon proof of *alibi*, and want of proof of motive. We have given but a brief summary of the principal points in the evi-

dence, but we have examined all the testimony with great care, and on the evidence we cannot say that the jury were not justified in coming to the conclusion which they did. The evidence seems to us sufficient to justify the verdict, and we cannot disturb that verdict on the ground of insufficiency of evidence.

Exception is taken to the ruling of the court in admitting the testimony of the witness Rhodes. The objection was taken to his evidence as a whole, the counsel refusing to make specific objections to particular parts of it. The court did not err in overruling that objection.

Nor was there any error in the rulings of the court in reference to the admission of the testimony of the witnesses Wheeler and Kinnie. That evidence was entirely with reference to the adjustment of the loss, and was introduced as showing the amount of loss as agreed upon and the value of the stock remaining, as ascertained in the course of adjustment in the presence of and with the assistance of the defendant. It tended to prove motive, and was admissible for that purpose. It was not conclusive, and did not preclude the defendant from introducing other evidence as to value.

The rulings of the court in sustaining the objections to the questions put to the witness Mesmer on cross-examination were not erroneous. Counsel had already drawn out from the witness that the hotel was mortgaged for fifty thousand dollars, and that it, with its contents, was insured for sixty-five thousand dollars. The questions objected to were irrelevant and incompetent, and not calculated to prove over-insurance or motive in Mesmer to set the fire.

It was a matter resting entirely in the discretion of the court to admit proof of the candle experiment. It would probably have admitted similar proof on the part of the defendant, if any had been offered, but the court was not bound to stop the proceedings of the court and try the experiment in open court, as proposed.

In this connection we notice a point made by associate counsel for the defense, who made the closing argument and prepared the closing brief. It seems he made a candle experiment after the case was appealed, in which he practically verified the testimony of the witness on that subject as to the length of time it would take a half candle to burn down to the point reached by those discovered at the time of the fire. From that result, and from the fact that it was half to three quarters of an hour after the fire was discovered before the candle which was found still burning was found, he argues that it was impossible that these trains could have been laid and those candles lighted until at least a half-hour after the defendant left the place. It will be remembered that the candle found burning was found in a closed locker or drawer. It was because so closed in that it was not earlier discovered. The fact that it was so shut out from the air, and in a confined space, will of itself account for that candle holding out so much longer than the others; and if counsel will try the experiment, he will probably find that a half candle burning under such circumstances will last fully half to three quarters of an hour longer than a similar one burned in the open air of the room.

It is claimed that the court erred in giving the eighth and ninth instructions. We fail to perceive anything in either of which the defendant can complain. Both state the law correctly and clearly, and counsel fails to show any reason why they should not have been given.

There was nothing in instruction No. 10½ of which the defendant can complain. The court correctly laid down the law as to the effect of the proof of *alibi*, and in cautioning the jury as to the propriety or necessity of carefully scrutinizing such evidence, adopted language which has several times met the approval of this court. (*People* v. *Wong Ah Foo*, 69 Cal. 180; *People* v. *Lee Gam*, 69 Cal. 552.)

The court did not err in refusing to grant a new trial on the ground of newly discovered evidence. The affidavits failed to disclose any newly discovered evidence which would be competent or admissible for any purpose.

Judgment and order affirmed.

WORKS, J., and PATERSON, J., concurred.

Rehearing denied.