STATE of Utah, Plaintiff and
Respondent,

v.

Robert M. GABALDON, Defendant
and Appellant.

No. 860224–CA.

Court of Appeals of Utah.

April 15, 1987.

Thomas L. Willmore, Harris, Preston, Gutke & Chambers, Logan, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Kimberly K. Hornak, Asst. Atty. Gen., for plaintiff and respondent.

Before ORME, DAVIDSON and GARFF, JJ.

## OPINION

GARFF, Judge:

Defendant appeals his jury conviction of theft by receiving stolen property and his sentence to the Utah State Prison by challenging the sufficiency of the evidence and the representative makeup of the jury.

On April 29, 1986, defendant drove Patricia Ann Martinez, her four-year old daughter, and Matthew E. Nevarez from Ogden to the Cache Valley Mall in Logan. During the next five hours Martinez engaged in a shoplifting spree during which she stole $1,150.60 worth of goods, among them a padlock, from six different stores, including the Bon, ZCMI and Sunset. During this shopping spree, defendant assisted Martinez in placing bags of stolen goods in the trunk of his car, was seen conferring with Martinez in the ZCMI store, and accompanied Nevarez when Nevarez, using an assumed name, obtained a refund for stolen goods at Sunset. ZCMI personnel notified police that they suspected the foursome of shoplifting. Police stopped the group on their return trip to Ogden and, upon defendant's consent, searched the vehicle. They found a large quantity of stolen items in the car, including a padlock under defendant's seat and $142 in defendant's possession.

Prior to this incident, on March 26, 1986, Bon personnel had seen defendant and Martinez in their store. Martinez admitted that they had been "casing the joint" in preparation for the shoplifting incident on April 29, 1986.

Martinez pleaded guilty to second degree felony theft. A jury convicted defendant and Nevarez of theft by receiving stolen property. Defendant was subsequently sentenced to serve one to fifteen years in the Utah State Prison.

Defendant's counsel has filed an "Anders brief," stating that he believes the appeal to be wholly frivolous and requesting leave to withdraw. In such cases, *State v. Clayton*, 639 P.2d 168 (Utah 1981), is controlling. *Clayton* adopted the conditions of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as binding in the State of Utah and as complying with the due process requirements of Article 1, Section 7 of the Utah Constitution.

■ The following steps must be complied with to satisfy the requirements of *Clayton:*

1. *Counsel for defendant must be an active advocate on behalf of his client, as opposed to merely functioning as an amicus curiae.* In this case, counsel for defendant submitted a brief clearly stating the issues and addressing the legitimate points of appeal.

2. *Counsel must support his client's appeal to the best of his ability.* Here, counsel's arguments on the issues were cogent and to the point, he cited accurate authority, and argued persuasively in support of defendant's position.

3. *Counsel must find the case to be wholly frivolous after a conscientious examination of it, so advise the Court, and then request permission to withdraw from the case.* Counsel made such a finding and request.

4. *The request to withdraw must be accompanied by a brief referring to anything in the record that might arguably support the appeal.* In the instant case, counsel complied with this step and raised all significant points on appeal.

In raising these points, counsel set forth two primary issues: First, did the State present sufficient evidence to prove beyond a reasonable doubt that defendant (1) received or retained stolen property; (2) knew or had reason to believe items were stolen; and (3) had the requisite intent to deprive the owners of their property. Second, did the State deprive defendant of his

right to a fair and impartial jury trial in that he is of Mexican descent and no members of the jury were of Mexican descent?

Appellant was convicted of theft by receiving stolen property under Utah Code Ann. § 76–6–408 (1953, as amended), which reads as follows:

A person commits theft if he receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it probably has been stolen, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be stolen with a purpose to deprive the owner thereof.

The evidence must show that the defendant knew or believed the property was stolen and that he acted purposely to deprive the owner of possession of the property.

Because it is the exclusive function of the jury to weigh the evidence and determine the credibility of the witnesses, and it is not the Court's function to substitute its judgment for that of the fact-finder, the "Court should only interfere when the evidence is so lacking and insubstantial that reasonable men could not possibly have reached a verdict beyond a reasonable doubt." *State v. Lamm*, 606 P.2d 229, 231 (Utah 1980); *State v. Wilson*, 565 P.2d 66, 68 (Utah 1977).

■ The standard for determining sufficiency of the evidence is that the evidence be "so inconclusive or so inherently improbable that reasonable minds could not reasonably believe defendant had committed a crime." *State v. Romero*, 554 P.2d 216, 219 (Utah 1976). In determining whether evidence is sufficient, the Court will review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the jury verdict. *State v. Kerekes*, 622 P.2d 1161, 1168 (Utah 1980). Unless there is a clear showing of lack of evidence, the jury verdict will be upheld. *State v. Logan*, 563 P.2d 811, 814 (Utah 1977).

■ The sheer volume of the goods stolen, that defendant personally handled and had the opportunity to observe a substantial amount of them, that he and Martinez were seen together by store personnel under conditions that suggested a common shoplifting enterprise, that store personnel saw defendant accompanying Nevarez when Nevarez returned stolen property for cash, and that defendant had a padlock and a substantial sum of money in his possession when apprehended for which no reasonable explanation was given, indicate that there was sufficient evidence to support the verdict. Thus, defendant's first point on appeal is without merit.

The second issue was whether defendant was deprived of his right to a fair and impartial trial in that he is of Mexican descent and no members of the jury panel were of Mexican descent.

The Utah Supreme Court, in *State v. Leggroan*, 25 Utah 2d 32, 475 P.2d 57, 59 (1970), in which a black defendant appealed her conviction on the ground that she was denied a fair trial because the selection of the jury unfairly excluded black persons, stated:

[T]here is no evidence whatever that the jury was selected by anyone in order deliberately to exclude anyone. The only suggestion of disproportionate selection amounting to prejudice is the happenstance that there were only ten women on a prospective panel of 50 veniremen chosen from the assessment rolls, which certainly would not warrant reversal; and such suggestion hardly could be implied from the fact that defendant was black, because this court could almost take note of the fact that the black citizens in Salt Lake County would represent no more than two per cent of the population, give or take a point,—so few that it would not be unusual that one or more would not be selected by lot.

■ In the present case, the trial judge, prior to swearing in the jury, denied defendant's objections to the absence of minorities on the jury panel on the following grounds: First, the panel selection process was done randomly, and second, judicial notice was taken that there were few individuals in the relevant geographical area

who would fit within the minority classification.

Furthermore, defendant's attorneys questioned all jurors on voir dire whether or not they had any bad feelings or ill-will toward persons of Mexican descent. Because of the factual similarity between this case and *Leggroan, Leggroan* is controlling, and defendant's second point on appeal is without merit.

5. *A copy of the brief must be furnished to the defendant and time allowed for him to raise any points that he chooses.* The brief shows that a copy was mailed to defendant in November 1986. Defendant submitted a handwritten brief, dated December 17, 1986, and filed it with the Clerk of the Supreme Court on December 22, 1986. In his *pro se* brief, defendant raised three issues: the money found in his possession on April 29, 1986 was received from umemployment insurance; the padlock in his car was one he had purchased on April 29, 1986, for which he had a receipt; and he was inadequately represented by counsel because he saw counsel only twice before trial and was not able to contact him by telephone.

These issues are without merit for the following reasons: First, defendant chose not to testify at trial. That decision necessarily meant that the jury would not have the benefit of defendant's version of how he came into possession of the padlock and cash.[1] Second, counsel was present at all critical stages of the proceeding, and his conduct was competent and professional.

6. *The Court, after full examination of the proceedings, must then decide whether the case is wholly frivolous.* A review of the briefs, the applicable legal authority, the record, and the transcript indicate that this appeal is wholly frivolous and without merit. Counsel's request to

withdraw is granted and the conviction is affirmed.

DAVIDSON and ORME, JJ., concur.

---

**1.** Parts of defendant's version of what happened did come to the jury's attention notwithstanding his decision not to testify. For example, the arresting officer's testimony included several references to defendant's claim at the time of arrest that he had purchased the padlock at Osco Drug in Ogden.